## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **JOSEPH M. CORLETT**, an individual, | Case No.: 2:13-cv-11145 |
| Plaintiff, | Judge: |
| v. | **COMPLAINT** |
| **OAKLAND UNIVERSITY BOARD OF TRUSTEES**, in its official capacity; **GARY RUSSI**, individually and in his official capacity as the President of Oakland University; and **MARY BETH SNYDER**, individually and in her official capacity as Vice President for Student Affairs and Enrollment Management of Oakland University. | Trial by Jury Demanded |
| Defendants. | |

_____

*"You can't have a university without having free speech."*
*Donna Shalala, Presidential Medal of Freedom Recipient*

### VERIFIED COMPLAINT

1.      Plaintiff Joseph M. Plaintiff Corlett ("Corlett"), by and through counsel, and for his complaint against Defendants Oakland University Board of Trustees ("Board"), Gary Russi ("Russi"), and Mary Beth Snyder ("Snyder") (collectively "Defendants"), hereby states as follows:

### INTRODUCTION

2.      Defendants Board of Trustees, Russi, and Snyder are being sued by Plaintiff Corlett for infringing upon the rights guaranteed to him by the Constitution of the United States of America.

## JURISDICTION AND VENUE

3.     This action raises federal questions under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

4.     This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

5.     This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief under 28 U.S.C. § 1343(3); the requested damages under 28 U.S.C. § 1343(3); and attorneys' fees under 42 U.S.C. § 1988.

6.     Venue is proper under 28 U.S.C. § 1391 in the United States District Court for the Eastern District of Michigan because a substantial part of the actions or omissions giving rise to this case occurred within this District.

## PLAINTIFF

7.     At all times relevant to this Complaint, Plaintiff Corlett is an undergraduate student pursuing a Bachelor of Arts degree in Writing and Rhetoric at Oakland University ("University" or "OU").

8.     Plaintiff Corlett is an adult citizen of the United States and pays tuition in order to attend the University.

## DEFENDANTS

9.     Defendant Board of Trustees is a political subdivision of Oakland University, a public university organized and existing under the laws of the State of Michigan.  The Board of Trustees is responsible for the University's administration and policy-making, including the policies and procedures challenged herein.  The Board is sued in its official capacity.

2

10.     Defendant Russi is, and was at all times relevant to the Complaint, President of Oakland University, a public university organized and existing under the laws of Michigan, and is responsible for enactment and enforcement of University policies, including the policies and procedures challenged herein.   Defendant Russi is sued in both his official and individual capacities.

11.     Defendant Snyder is, and was at all times relevant to the Complaint, the Vice President for Student Affairs and Enrollment Management of Oakland University, a public university organized and existing under the laws of Michigan, and is responsible for overseeing and enforcing the policies and procedures challenged herein.  Defendant Snyder is sued in both her individual and official capacities.

**FACTUAL BACKGROUND**

**A.  <u>Events Leading Up To Enforcement of University's Policies Against Plaintiff Corlett</u>**

12.     Plaintiff Corlett is a self-employed, Michigan-licensed residential builder with decades of experience and numerous satisfied customers.

13.     Due to the economic downturn in Michigan, Plaintiff Corlett decided to attain a bachelor's degree in writing for personal and professional growth.

14.     In Fall 2010, Plaintiff Corlett enrolled in several classes at OU for purposes of fulfilling his associate degree requirement at Oakland Community College ("OCC").

15.     In December 2010, Plaintiff Corlett graduated from OCC with an associate degree.

16.     Plaintiff Corlett decided and did continue his education by enrolling as a full-time student at OU in Fall 2011.

17.     To satisfy the University's writing requirements, Plaintiff Corlett enrolled in "English 380: Advanced Critical Writing," taught by Pamela Mitzelfeld ("Mitzelfeld").

18.     In the syllabus provided to students by Mitzelfeld, English 380 was described as offering students "the opportunity to develop (their) own writing process and processes of others." (EXHIBIT A)

19.     On or about September 15, 2011, Plaintiff Corlett submitted an essay he drafted for Mitzelfeld's review that was composed to satisfy the class' "anecdote" assignment. (EXHIBIT B)

20.     This essay was a personal recollection of several incidents involving Plaintiff Corlett accidentally witnessing in public the brief exposure of women's breasts.

21.     After an English 380 class, Mitzelfeld and her teaching assistant informed Plaintiff Corlett that they were amused by his essay and recommended several suggestions including, but not limited to, changing the title from "The Boobs I Wasn't Meant to See" to "My Boobs DVD."

22.     The final draft of "My Boobs DVD" garnered Plaintiff Corlett an "A" from Mitzelfeld.

23.     In fact, several essays submitted by Plaintiff Corlett discussed sexual themes and received "A" grade's from Mitzelfeld. (EXHIBIT C, EXHIBIT D)

24.     Another component of the English 380 curriculum implemented by Mitzelfeld was a Writer's Daybook ("Daybook") that was to be "randomly reviewed three times during the semester." (EXHIBIT E)

25.     The Daybook was to be "an ongoing volume that essentially functions as a place for a writer to tryout [sic] ideas and record impressions and observations."

4

26.     Mitzelfeld outlined in her handout what she expected the students to mention in the Daybook (e.g. "new vocabulary") and other requirements. The handout was devoid of subject matter restrictions.

27.     Plaintiff Corlett was familiar with previous writing professors and their idiosyncrasies and intolerance towards certain topics for writing assignments (e.g., personal sex life, family members, etc.), so he asked Mitzelfeld on the first day of class, in front of her teaching assistant, if any topics were restricted or prohibited.  Mitzelfeld emphatically replied "no" to Plaintiff Corlett and that she wanted the "raw stuff" (i.e., no edits or second guessing) to be captured in the Daybook.

28.     With this information from Mitzelfeld, coupled with (1) the Daybook handout and (2) Mitzelfeld's positive feedback without objection towards his previously submitted writing, Plaintiff Corlett proceeded to compose entries for his personal Daybook exploring a variety of themes and ideas.

29.     On or about September 10, 2011, Plaintiff Corlett composed a Daybook entry entitled "Hot for Teacher," which was named after a 1984 song performed by the hard rock band Van Halen.  This entry was a whimsical exaggeration of his attraction towards Mitzelfeld. (EXHIBIT F)

30.     Plaintiff Corlett reasonably continued to rely on Mitzelfeld's statement that any subject matter was permitted, and on or about September 23, 2011, he continued his "Hot for Teacher" theme in another Daybook entry. (EXHIBIT G)

31.     On or about November 1, 2011, and after approximately three-fourths of English 380 had been completed, Mitzelfeld collected Plaintiff Corlett's Daybook, for the first time, for her review.

32.     On or about November 2, 2011 Plaintiff Corlett received a phone call from Dean Glenn McIntosh ("McIntosh") requesting that Plaintiff Corlett come to his office later that day for a meeting.

33.     At the time of these events, McIntosh was Assistant Vice President for Student Affairs and Dean of Student Life at the University.

34.     At this meeting, Plaintiff Corlett first became aware of Mitzelfeld's discontent with some of his Daybook entries. Also, McIntosh instructed Plaintiff Corlett to not attend English 380 for the remainder of the week.

35.     Plaintiff Corlett abided by McIntosh's request and did not attend English 380 for the rest of the week, which was only one class.

36.     Having not received any further instruction from McIntosh, Mitzelfeld, or any other OU administrator, Plaintiff Corlett reasonably inferred that any issue(s) with his Daybook entries had been resolved and that he was permitted to resume attending English 380 in the upcoming week.

37.     Therefore, on or about November 8, 2011, Plaintiff Corlett calmly settled into the English 380 classroom.  But prior to class commencing, in front of his classmates, Mitzelfeld had Plaintiff Corlett escorted out of her classroom by the OU Police Department.

38.     The OU Police Department escorted Plaintiff Corlett to McIntosh's office.

39.     McIntosh was apologetic to Plaintiff Corlett for not apprising him that he was no longer permitted to physically attend English 380 for the remainder of the semester.

40.     On or about November 18, 2011, McIntosh offered Mr. Plaintiff Corlett a monetary refund of the amount corresponding to his enrollment in English 380 upon his

6

withdrawal.  Plaintiff Corlett declined this offer due to the fact that he had completed nearly an entire semester's worth of work for the class.

41.     Plaintiff Corlett remained officially enrolled in English 380 and his request to submit his assignments via an intermediary was denied.

42.     Concerned and disheartened by OU's adverse treatment of him for merely completing a writing assignment, Plaintiff Corlett contacted the Foundation for Individual Rights in Education ("FIRE"), a nonpartisan nonprofit organization located in Philadelphia, Pennsylvania. (EXHIBIT H)

43.     According to its mission statement, FIRE unites leaders in the fields of civil rights and civil liberties, scholars, journalists, and public intellectuals from across the political and ideological spectrum on behalf of liberty, legal equality, academic freedom, due process, freedom of speech, and freedom of conscience on America's college campuses.

44.     In a December 16, 2011, letter addressed to Russi, FIRE echoed Plaintiff Corlett's concerns and apprised OU that Plaintiff Corlett's First Amendment rights were being infringed upon by OU.  (EXHIBIT I)

45.     Despite being aware of Plaintiff Corlett's constitutional rights, OU nevertheless decided to pursue disciplinary action against Plaintiff Corlett for his Daybook entries.

**B. <u>Disciplinary Action Against Plaintiff Corlett</u>**

46.     On or about January 3, 2012, Karen Lloyd ("Lloyd") informed Plaintiff Corlett via email that his University Conduct Committee ("UCC") hearing was going to be held on January 6, 2012 for his alleged violation of University Ordinances and Regulation #6.02 - Unlawful Individual Activities ("Regulation 6.02" or "Unlawful Activities Policy"). That policy reads:

No person shall engage in any activity, individually or in concert with others, which causes or constitutes a disturbance, noise, riot, obstruction or disruption that obstructs or interferes with the free movement of persons about the campus or which interferes with the free, normal, and uninterrupted use of the campus for educational programs, business activities and related residential, food service and recreational activities, nor shall any person in any way intimidate, harass, threaten or assault any person engaged in lawful activities on campus.  (EXHIBIT J)

47.     On or about January 3, 2012, Lloyd was Assistant Dean of Students at the University.

48.     Per the University Student Handbook, the University Conduct Committee hearing is reserved for alleged violation(s) of a non-academic nature.  The purpose of the hearing is to make a decision regarding responsibility or innocence with respect to the alleged violation(s) and to determine appropriate sanction(s).

49.     On or about January 6, 2012, Plaintiff Corlett attended the UCC hearing.  Several minutes after commencement of the hearing, it was discovered that Plaintiff Corlett was not provided with requisite notice (at least 72 hours in advance) of the hearing and that proceedings would need to cease until a further date.

50.     The UCC hearing was eventually rescheduled for January 19, 2012.

51.     On or about January 19, 2012, Plaintiff Corlett attended his UCC hearing.  The UCC hearing panel was comprised of five University faculty representatives and one University student representative.

52.     After several hours, the UCC hearing concluded without Plaintiff Corlett being permitted to present any relevant evidence on his behalf and as stated by Snyder, the UCC board neglected to properly record by audio device the proceedings.  (EXHIBIT K)

53.     According to the University's provision for "Student Judicial Process – Hearing Types," "hearings of the UCC … are tape recorded to provide a record in the event of an appeal."

54.     Ultimately, Mr. Plaintiff Corlett's completion of a classroom assignment was considered to be "unlawful activity" by the UCC board, and he was found guilty of violating *University Regulation #6.02 – Unlawful Individual Activities*.

55.     The UCC board determined that Plaintiff Corlett's Daybook entries rose to a level of "intimida(tion)" towards a "person engaged in lawful activities on campus."

56.     The United States Supreme Court defined unprotected "intimidation" as "a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Virginia v. Black*, 538 U.S. 343, 360 (2003).

57.     A reasonable interpretation of the Daybook entries composed by Plaintiff Corlett does not satisfy the Supreme Court's controlling, narrow standard for intimidation cited in Paragraph 56.

58.     Ultimately, the UCC board suspended Plaintiff Corlett, which prevented him from enrolling in any OU classes for three semesters (Summer 2012, Fall 2012, and Winter 2013), deemed him *persona non grata* on its campus during the suspension, and required him to undergo counseling for sensitivity issues prior to his return to University.  (EXHIBIT L)

59.     On or about February 9, 2012, Plaintiff Corlett submitted, via electronic mail, his formal appeal request for the January 19, 2012 UCC hearing to Snyder. (EXHIBIT M)

60.     On or about March 5, 2012, Defendant Dean Snyder informed Plaintiff Corlett, via electronic mail and first class mail, that his request for appeal was denied.  (EXHIBIT N)

**C. The Effect of the University's Unlawful Activities Policy on Plaintiff Corlett**

61.     The Unlawful Activities Policy contained in the University Ordinances and Regulation section of the University Student Handbook states:

> No person shall engage in any activity, individually or in concert with others, which causes or constitutes a disturbance, noise, riot, obstruction or disruption that obstructs or interferes with the free movement of persons about the campus or which interferes with the free, normal, and uninterrupted use of the campus for educational programs, business activities and related residential, food service and recreational activities, *nor shall any person in any way intimidate, harass, threaten or assault any person engaged in lawful activities on campus.* (Emphasis added.)

62.     The university's interpretation and application of this policy has a chilling effect on Plaintiff Corlett's right to freely and openly engage in discussions of his theories, ideas, and beliefs.  By enforcing this policy against his peaceful expression in a class assignment — labeling such expression an "unlawful activity" — OU and Defendants have violated rights guaranteed to Plaintiff Corlett and to all University students by the First and Fourteenth Amendments to the Constitution of the United States of America.  These rights are clearly established by governing legal authority, and Defendants' violations are knowing, intentional, and without lawful justification.

63.     Since the commencement of his suspension from the University (Summer 2012), Plaintiff Corlett has abided by the terms of the imposed suspension.  Because of the suspension, he has not entered onto the University campus, nor has he enrolled in any University classes.

64.     Because of the University's onerous Unlawful Activities Policy and intolerance of any students who dissent from its politically correct orthodoxy, Plaintiff Corlett is unable to engage in a full range of dialogue on matters of legitimate political, cultural, and/or social concern.

65.   Plaintiff Corlett is an undergraduate student and finds himself consistently engaged in classroom discussions and assignments regarding issues implicated by the University's Unlawful Activities Policy, and Plaintiff Corlett fears that the discussion of his social, cultural, political, and/or religious views regarding these issues may continue to be sanctioned under the Unlawful Activities Policy.

66.   Defendants' Unlawful Activities Policy is overbroad, and their application of this policy violates rights guaranteed by the Constitution of the United States.

67.   The overbreadth of Defendants' policy and practice chills protected speech by discouraging students, like Plaintiff Corlett, from exercising their First and Fourteenth Amendment rights based on fear that they will be punished for engaging in expressive activity.

68.   Defendants' aforementioned policy and practice are not the least restrictive means to serve any legitimate, let alone compelling, interest that Defendants seek thereby to serve.

69.   OU's Unlawful Activities Policy is vague and overbroad and constitutes an illegal prior restraint on Plaintiff Corlett's rights of free speech and assembly.  This policy is therefore facially invalid under the Free Speech Clause of the First Amendment and the due process and equal protection provisions of the Fourteenth Amendment.

70.   OU's Unlawful Activities Policy is, furthermore, unconstitutional as-applied to Plaintiff Corlett.

71.    Additionally, OU's Unlawful Activities Policy has not only resulted in Plaintiff Corlett's suspension from the University, but has caused him to suffer humiliation and mental anguish.  So long as this policy survives, the University is causing ongoing and irreparable harm to Plaintiff Corlett and to every student at the University.

72.    The Defendants' unconstitutional and discriminatory conduct was evil, motivated by evil intent, and was oppressive and malicious.

## TRIAL BY JURY DEMANDED

73.    Plaintiff Corlett is entitled to and hereby respectfully demands a trial by jury.  US Const. amend. 7; Fed. R. Civ. P. 38.

## FIRST CAUSE OF ACTION

## First Amendment Retaliation
## (42 U.S.C. § 1983)

74.    Plaintiff Corlett repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint.

75.    Defendants' Unlawful Activities Policy states:

No person shall engage in any activity, individually or in concert with others, which causes or constitutes a disturbance, noise, riot, obstruction or disruption that obstructs or interferes with the free movement of persons about the campus or which interferes with the free, normal, and uninterrupted use of the campus for educational programs, business activities and related residential, food service and recreational activities, *nor shall any person in any way intimidate, harass, threaten or assault any person engaged in lawful activities on campus.* (Emphasis added.)

76.    Defendants enforced the policy referenced in Paragraph 75 by suspending Plaintiff Corlett and prohibiting him from enrolling into any University classes for three semesters (Summer 2012, Fall 2012, and Winter 2013), deeming him *persona non grata* on its campus during the suspension, and requiring him to undergo sensitivity counseling prior to his return to the University.

77.    By suspending Plaintiff Corlett from the University for alleged intimidating behavior pursuant to the Unlawful Activities Policy, denigrating his personal and professional abilities in reviewing his Daybook, requiring him to complete sensitivity counseling, refusing to

award him his credit for English 380, and delaying his graduation from the University, among other adverse actions, Defendants have retaliated against Plaintiff Corlett for adhering to Mitzelfeld's instructions regarding the Daybook and engaging in constitutionally-protected speech.

78.     Defendants' decision to suspend Plaintiff Corlett from the University was motivated entirely by Plaintiff Corlett's constitutionally-protected speech.

79.     Defendants, acting under the color of state law, and pursuant to University policies and practices, have engaged in actions that are retaliatory and have therefore deprived Plaintiff Corlett of his clearly established free speech rights guaranteed by the First and Fourteenth Amendments to the United States Constitution.

80.     Because of Defendants' enactment and enforcement of the Unlawful Activities Policy, Plaintiff Corlett has suffered, and continues to suffer, economic injury, mental anguish, and irreparable harm.  He, therefore, is entitled to an award of monetary damages, including compensatory and punitive damages and equitable relief.

81.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff Corlett is entitled to an award of monetary damages and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

### SECOND CAUSE OF ACTION

### Fourteenth Amendment Equal Protection
### (42 U.S.C. § 1983)

82.     Plaintiff Corlett repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint.

83.     Defendants' Unlawful Activities Policy states:

No person shall engage in any activity, individually or in concert with others, which causes or constitutes a disturbance, noise, riot, obstruction or disruption that obstructs or interferes with the free movement of persons about the campus or which interferes with the free, normal, and uninterrupted use of the campus for educational programs, business activities and related residential, food service and recreational activities, *nor shall any person in any way intimidate, harass, threaten or assault any person engaged in lawful activities on campus.* (Emphasis added.)

84.    Defendants enforced the policy referenced in Paragraph 83 by suspending Plaintiff Corlett and prohibiting him from enrolling into any University classes for three semesters (Winter 2012, Summer 2012, and Fall 2012), "Deferred University Disciplinary" suspension for Winter 2013, deeming him *persona non grata* on its campus during the suspension, and requiring him to undergo sensitivity counseling prior to his return to the University.

85.    By suspending Plaintiff Corlett from the University for alleged intimidating behavior, denigrating his personal and professional abilities in reviewing his Daybook, requiring him to complete sensitivity counseling, refusing to award him his credit for English 380, and delaying his graduation from University, among other adverse actions, Defendants have treated Plaintiff Corlett differently than similarly situated persons based on his exercise of the fundamental right to free speech.

86.    Other students who submitted English 380 assignments and Daybook entries were not singled out for punishment as Plaintiff Corlett was for his Daybook entries.

87.    Once Plaintiff Corlett composed his Daybook entries and completed his assignment, it became immutable—Plaintiff Corlett could not possibly nor should he have been required to unwrite or unsubmit the assignment.

88.    Because of Defendants' policies and actions, Plaintiff Corlett has suffered, and continues to suffer, economic injury, mental anguish, and irreparable harm.  He, therefore, is

entitled to an award of monetary damages, including compensatory and punitive damages and equitable relief.

89.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff Corlett is entitled to an award of monetary damages and the reasonable costs of this lawsuit, including his reasonable attorneys' fees.

### THIRD CAUSE OF ACTION

### Violation of Plaintiff Corlett's Right to Freedom of Expression and Due Process of Law (42 U.S.C. § 1983)

90.     Plaintiff Corlett repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint.

91.     Defendants' Unlawful Activities Policy states:

No person shall engage in any activity, individually or in concert with others, which causes or constitutes a disturbance, noise, riot, obstruction or disruption that obstructs or interferes with the free movement of persons about the campus or which interferes with the free, normal, and uninterrupted use of the campus for educational programs, business activities and related residential, food service and recreational activities, *nor shall any person in any way intimidate, harass, threaten or assault any person engaged in lawful activities on campus.* (Emphasis added.)

92.     Due to alleged intimidating behavior, Defendants enforced the policy referenced in Paragraph 91 by suspending Plaintiff Corlett and prohibiting him from enrolling into any University classes for three semesters (Winter 2012, Summer 2012, and Fall 2012), "Deferred University Disciplinary" suspension for Winter 2013, deeming him *persona non grata* on its campus during the suspension, and requiring him to undergo sensitivity counseling prior to his return to the University.

93.     The vagueness and lack of published guidelines in Defendants' Unlawful Activities Policy permit Defendants to enforce their policy in a discriminatory and arbitrary

15

manner against protected expression and conduct. The vagueness of Defendants' policy violates due process rights protected under the Fourteenth Amendment to the United States Constitution.

94.    The United States Supreme Court defines "intimidation" as "a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Virginia v. Black*, 538 U.S. 343, 360 (2003).

95.    The State of Michigan defines harassment as "…repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress.   *Harassment does not include constitutionally protected activity or conduct that serves a legitimate purpose*."   MCL 750.411h(1)(c) (Emphasis added).

96.    The State of Michigan defines a credible threat as "a threat to kill another individual or a threat to inflict physical injury upon another individual that is made in any manner or in any context that causes the individual hearing or receiving the threat to reasonably fear for his or her safety or the safety of another individual."  MCL 750.411i(1)(b).

97.    Michigan courts define assault as "an intentional, unlawful offer or attempt to cause bodily injury to another by force."  *Mitchell v. Daly,* 133 Mich. App. 414, 415 (1984).

98.    Nonetheless, despite these long-established legal definitions, Defendants have conditioned compliance with the Unlawful Activities Policy on the subjective emotional experience of the listener.  This policy has limited and prohibited constitutionally-protected speech and conduct without providing any published, objective, and definite guidelines by which Plaintiff Corlett and other students can guide their behavior.

99.    Defendants' enforcement of Regulation 6.02, acting under the color of state law and pursuant to University policies and practices, deprived Plaintiff Corlett of his clearly

established due process rights guaranteed by the First and Fourteenth Amendments to the United States Constitution and his clearly established rights to freedom of speech and expression secured by the First and Fourteenth Amendments to the United States Constitution.

100.    Because of Defendants' actions, Plaintiff Corlett has suffered, and continues to suffer, irreparable injury that cannot be fully compensated by an award of money damages.

101.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff Corlett is entitled to a preliminary and permanent injunction invalidating and restraining enforcement of the University's Unlawful Activities Policy.    Additionally, Plaintiff Corlett is entitled to compensatory and punitive damages and the reasonable costs of this lawsuit, including his reasonable attorneys' fees.

## FOURTH CAUSE OF ACTION

### Violation of Plaintiff Corlett's First Amendment Right to Freedom of Expression through Viewpoint Discrimination
### (42 U.S.C. § 1983)

102.    Plaintiff Corlett repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint.

103.    Defendants' Unlawful Activities Policy states:

No person shall engage in any activity, individually or in concert with others, which causes or constitutes a disturbance, noise, riot, obstruction or disruption that obstructs or interferes with the free movement of persons about the campus or which interferes with the free, normal, and uninterrupted use of the campus for educational programs, business activities and related residential, food service and recreational activities, *nor shall any person in any way intimidate, harass, threaten or assault any person engaged in lawful activities on campus.* (Emphasis added.)

104.    Due to alleged intimidating behavior, Defendants enforced the policy referenced in Paragraph 103 by suspending Plaintiff Corlett and prohibiting him from enrolling into any University classes for three semesters (Winter 2012, Summer 2012, and Fall 2012), "Deferred

17

University Disciplinary" suspension for Winter 2013, deeming him *persona non grata* on its campus during the suspension, and requiring him to undergo sensitivity counseling prior to his return to the University.

105.    Defendants' Unlawful Activities Policy explicitly prohibits behavior that "intimidate(s), harass(es), threaten(s), or assault(s) any person engaged in lawful activities on campus."

106.    Without limiting the aforementioned terms to their legal definitions, as cited in Paragraphs 94-97 Defendants have explicitly and implicitly discriminated on the basis of subjective viewpoint and deprived Plaintiff Corlett of his clearly established rights to freedom of speech and expression secured by the First and Fourteenth Amendments to the Constitution of the United States.

107.    Because of Defendants' actions, Plaintiff Corlett has suffered, and continues to suffer, irreparable injury that cannot be fully compensated by an award of money damages.

108.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff Corlett is entitled to a preliminary and permanent injunction invalidating and restraining enforcement of University's Unlawful Activities Policy.   Additionally, Plaintiff Corlett is entitled to compensatory and punitive damages and the reasonable costs of this lawsuit, including his reasonable attorneys' fees.

### FIFTH CAUSE OF ACTION

### Violation of Plaintiff Corlett's First Amendment Right to Freedom of Expression through Overbreadth
### (42 U.S.C. § 1983)

109.    Plaintiff Corlett repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint.

110.    Defendants' Unlawful Activities Policy states:

No person shall engage in any activity, individually or in concert with others, which causes or constitutes a disturbance, noise, riot, obstruction or disruption that obstructs or interferes with the free movement of persons about the campus or which interferes with the free, normal, and uninterrupted use of the campus for educational programs, business activities and related residential, food service and recreational activities, *nor shall any person in any way intimidate, harass, threaten or assault any person engaged in lawful activities on campus.* (Emphasis added.)

111.    Due to allegedly intimidating behavior, Defendants enforced the policy referenced in Paragraph 110 by suspending Plaintiff Corlett and prohibiting him from enrolling into any University classes for three semesters (Summer 2012, Fall 2012, and Winter 2013), deeming him *persona non grata* on its campus during the suspension, and requiring him to undergo sensitivity counseling prior to his return to University.

112.    Defendants' policy explicitly prohibits, among other things, behavior that "intimidate(s), harass(es), threaten(s), or assault(s) any person engaged in lawful activities on campus."

113.    Without limiting the aforementioned terms to their legal definitions, cited in Paragraphs 94-97, the Unlawful Activities Policy is overbroad because it prohibits a wide range of protected speech and expression. By maintaining this policy, and enforcing it against Plaintiff Corlett, Defendants have deprived him of his clearly established rights to freedom of speech and expression secured by the First and Fourteenth Amendments to the Constitution of the United States.

114.    Because of Defendants' actions, Plaintiff Corlett has suffered, and continues to suffer, irreparable injury which cannot be fully compensated by an award of money damages.

115.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiff Corlett is entitled to a preliminary and permanent injunction invalidating and restraining enforcement of OU's

Unlawful Activities Policy.   Additionally, Plaintiff Corlett is entitled to compensatory and punitive damages and the reasonable costs of this lawsuit, including his reasonable attorneys' fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Corlett respectfully requests that this Court enter judgment against Defendants Board of Trustees, Russi, and Snyder, and provide Plaintiff Corlett with the following relief:

A.      A declaratory judgment stating that Defendants' University Regulation 6.02 – Unlawful Individual Activities is facially and as-applied unconstitutional and violates Plaintiff Corlett's rights as guaranteed to him by and through the First and Fourteenth Amendments to the United States Constitution;

B.      A preliminary and permanent injunction restraining enforcement of Defendants' unconstitutional University Regulation 6.02 – Unlawful Individual Activities;

C.      A declaratory judgment that Defendants' disciplinary proceedings against Plaintiff Corlett violated his rights as guaranteed under the First and Fourteenth Amendments to the United States Constitution;

D.      An order requiring the Defendants to expunge from school records any and all mention of the disciplinary investigation and proceeding against Plaintiff Corlett;

E.      A preliminary and permanent injunction requiring OU to give Plaintiff Corlett the applicable four credits and a grade for his English 380 class;

F.      Compensatory damages against Defendants in the amount of two-million-two-hundred-thousand dollars ($2,200,000.00) or in any amount this Court deems just and proper;

G.      Exemplary or punitive damages against Defendants in an amount this Court deems just and proper;

H.      Plaintiff Corlett's reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988;

I.       All pretrial and post-trial interest on any and all monetary relief awarded to Plaintiff Corlett; and

J.       All other relief to which Plaintiff Corlett is entitled.

Respectfully submitted this 15 day of March, 2013,


                                        s/ Alari K. Adams
                                        Alari K. Adams, Esq.
                                        ASquared Legal Group, PLC
                                        200 Walker Street
                                        Detroit, Michigan 48226
                                        (P) 810-223-1354
                                        (E) aadams@asquaredlegal.com
                                        Michigan Bar No. #P73324
                                        www.asquaredlegal.com
                                        *Lead Counsel for Plaintiff*


                                        Kyle J. Bristow, Esq.
                                        France Law Group, LLC
                                        6545 W. Central Ave., Ste. 206
                                        Toledo, OH 43617
                                        (P) 419-725-9300
                                        (F) 419-720-8745
                                        (E) kbristow@francelawgroup.net
                                        Ohio S. Ct. #0089543
                                        www.francelawgroup.net
                                        *Counsel for Plaintiff*